**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| PAUL W.,[1]<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 2:25-cv-00454<br><br>Magistrate Judge Caroline H. Gentry<br>(by full consent of the parties) |

## DECISION AND ORDER

Plaintiff filed an application for Supplemental Security Income (SSI) on October 17, 2022. Plaintiff's claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, this Court **AFFIRMS** the Commissioner's decision.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

## I. BACKGROUND

Plaintiff filed an application for SSI on June 28, 2019. After the claim was denied at the initial and reconsideration levels, an ALJ issued an unfavorable decision on June 22, 2021. ("Prior Decision," Doc. No. 7-3 at PageID 85-115.) The Appeals Council denied Plaintiff's request for review of that decision.

Plaintiff filed a new SSI application on October 17, 2022, and asserted that that he had been under a disability since March 1, 2022.[2] At that time, he was forty-five years old and was considered a "younger person." 20 C.F.R. § 416.963(c). Plaintiff has a "marginal education." 20 C.F.R. § 416.964(b)(2).

The evidence in the Administrative Record ("AR," Doc. No. 7) is summarized in the ALJ's decision ("Decision," Doc. No. 7-2 at PageID 36-62), Plaintiff's Statement of Errors ("SE," Doc. No. 8), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 12), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 13). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II. STANDARD OF REVIEW

The Social Security Administration provides SSI to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means

---

[2] Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. Thus, the relevant period of consideration in this case begins on October 17, 2022. See 20 C.F.R. § 416.335; *Koster v. Comm'r of Soc. Sec.*, 643 F. App'x. 466, 478 (6th Cir. 2016) ("For purposes of SSI, which is not retroactive, the relevant period here is ... the date [Plaintiff] filed his protective application.").

"the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "[W]hether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id.*

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). This standard "presupposes that there is a zone of choice within which

the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III. FACTS

### A. The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 416.920. The ALJ made the following findings of fact:

Step 1: Plaintiff has not engaged in substantial gainful activity since October 17, 2022, the SSI application date.

Step 2: He has the severe impairments of degenerative disc and joint disease of the spine, asthma, obesity, depressive disorder, generalized

anxiety disorder, post-traumatic stress disorder (PTSD), and borderline intellectual functioning.

Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: His residual functional capacity (RFC), or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 C.F.R. § 416.967(b), subject to the following limitations: "[Plaintiff] could occasionally climb ladders, ropes, and scaffolds. He could occasionally stoop and crawl. He could frequently climb ramps and stairs and frequently balance. [Plaintiff] could have frequent exposure to pulmonary irritants, such as fumes, odors, dusts, and gases. He could have frequent exposure to hazards, including use of moving machinery and exposure to unprotected heights. [Plaintiff] could perform where instructions are provided orally and where tasks could be learned by demonstration. He could perform simple, routine tasks and could have occasional interaction with coworkers, but could not perform tandem or shared tasks. [Plaintiff] could have occasional interaction with supervisors, but could not have close, over-the- shoulder supervision. [Plaintiff] could have occasional interaction with the public, but not in a customer service capacity. [Plaintiff] could adapt in settings where job related changes are not frequent and where changes are explained in advanced [sic]."

He has no past relevant work.

Step 5: Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform.

(Decision, Doc. No. 7-2 at PageID 42-56.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability. (*Id.* at PageID 56-57.)

**B. The ALJ's Decision**

The ALJ stated that she was "bound by the findings" in the prior ALJ's decision "in the absence of new and material additional evidence or changed circumstances."

(Decision, Doc. No. 7-2 at PageID 42 (citing Soc. Sec. Acquiescence Rulings 98-3(6) and 98-4(6), *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) and *Dennard v. Sec. of HHS*, 907 F.2d 598 (6th Cir. 1990)).) The ALJ explained that new evidence "is 'material' if … the evidence both differs from that presented in the prior claim and warrants a finding different than [that] made in the decision on the prior claim." (*Id.*) The ALJ concluded that no material evidence allowed her to deviate from the prior findings:

> The undersigned has reviewed and considered the current evidentiary record. New evidence in this claim is not material, however, as it does not warrant deviating from the prior ALJ's decision with regard to the severe impairments, listings, residual functional capacity, past relevant work, or education. The prior ALJ decision findings fully account for [Plaintiff's] medical and mental conditions with no significant change in [Plaintiff's] physical or mental functioning since that decision…. As new evidence in this current claim is not material, i.e., does not warrant deviating from the prior findings, the undersigned adopts the June 22, 2021, prior ALJ decision.

(Decision, Doc. No. 7-2 at PageID 42.)

Next, the ALJ set forth a detailed summary of the evidence in the record, beginning with Plaintiff's complaints in the disability reports, medical records, and his February 2024 hearing testimony. The ALJ noted Plaintiff's subjective complaints of back pain, asthma, depression, anxiety, panic attacks, and difficulty with comprehension. (Decision, Doc. No. 7-2 at PageID 49.) The ALJ considered Plaintiff's testimony that he could stand no more than twenty minutes at a time, walked with a cane, and had difficulty with lifting, squatting, bending, standing, and climbing stairs. *Id.* The ALJ acknowledged Plaintiff's testimony that he did not like people, did not leave the house alone, and had a family friend help him with daily activities and household chores. *Id.*

The ALJ also considered the medical records related to Plaintiff's treatment for his physical impairments. (Decision, Doc. No. 7-2 at PageID 49.) Addressing Plaintiff's asthma, the ALJ acknowledged that progress notes dated after the prior ALJ decision showed mild to moderate asthma that was "worse with air pollutants and exercise." (*Id.*) The ALJ noted that "[m]uch of Plaintiff's treatment [was] through the emergency department" and cited several emergency room visits for upper respiratory symptoms between November 2021 and January 2023. (*Id.* at PageID 49-50.) The ALJ explained that during those visits, Plaintiff was only treated for acute exacerbations and his lung examinations were normal, his chest x-rays showed no significant abnormalities, and his oxygen saturation was ninety-eight to ninety-nine percent. (*Id.*) The ALJ noted that other lung examinations in the record were normal, with findings such as normal pulmonary effort, no respiratory distress, normal breath sounds, and no wheezing or rhonchi. (*Id.* at PageID 49-50.) The ALJ concluded that Plaintiff's asthma was "mild and uncomplicated with no attacks or exacerbations noted during the relevant period." (*Id.* at PageID 49.)

Next, the ALJ considered Plaintiff's treatment for his back and joint paint complaints. (Decision, Doc. No. 7-2 at PageID 50-51.) The ALJ noted that Plaintiff complained of increased back pain after a fall, but denied numbness, tingling, and weakness. (*Id.* at PageID 50.) The ALJ noted that the April 2023 consultative physical examination showed some abnormalities such as decreased range of motion of the neck, shoulders, and back, as well as spinal tenderness, tenderness of the knees and lower legs, positive straight leg raising bilaterally, mild weakness of the hands, and a limping gait. (*Id.*) The ALJ also noted that the consultative physician documented several normal

findings, including no difficulty with plantar flexion and dorsiflexion, normal sensation, and normal range of motion of the hands, wrists, and arms. (*Id.* at PageID 50-51.)

The ALJ acknowledged that Plaintiff sought emergency room treatment for increased back pain in November 2023, after Plaintiff reported "moving boxes in his basement." (*Id.* at PageID 51.) The ALJ noted that Plaintiff complained of pain with truncal movements but other findings were normal, including normal range of motion of the lower extremities, normal reflexes, no weakness, normal coordination, a normal gait, and no radiculopathy. (*Id.*)

The ALJ compared this evidence to other examinations in the record. (Decision, Doc. No. 7-2 at PageID 50-51.) The ALJ acknowledged that some examinations showed low back tenderness but had other findings that were normal, including normal range of motion, negative straight leg raising, a normal gait, and no weakness. (*Id.*) The ALJ noted that Plaintiff's treatment was conservative and included physical therapy, Voltaren gel, and recommendations to exercise and use heat and ice. (*Id.*)

The ALJ acknowledged Plaintiff's obesity and also noted that after the prior ALJ decision, Plaintiff made "lifestyle modifications" and lost weight. (Decision, Doc. No. 7-2 at PageID 51.) For example, Plaintiff lowered his BMI from 36 to 33 by early 2022, and his BMI was just 31 in April 2023. (*Id.*)

After summarizing the evidence regarding Plaintiff's physical impairments, the ALJ formulated an RFC with a reduced range of light work:

> This evidence supports the ability to perform light work with limited postural activities and limited exposure to pulmonary irritants and hazards. The reduced exertion accommodates [Plaintiff's] back pain, asthma, and

> obesity. The postural limitations account for back and joint pain as well. The environmental restrictions account for asthma, pain, and obesity. [Plaintiff's] shoulder pain does not necessitate specific reaching restrictions and is accounted for with reduced exertion to light and limited use of ladders, ropes, or scaffolds. The evidence does not establish a documented medical need for an assistive device. [Plaintiff] reportedly uses a cane occasionally (Exhibit C4E, C3F, C5F); however, he is not observed to use a cane during medical appointments and his gait is consistently normal (see Exhibits C1F, C14F, C19F, C20F, C25F).

(Decision, Doc. No. 7-2 at PageID 51.)

Next, the ALJ considered medical records that documented Plaintiff's treatment for mental impairments during the relevant time period. (Decision, Doc. No. 7-2 at PageID 51-53.) The ALJ acknowledged that treatment notes showed abnormalities such as anxious and/or dysphoric moods, flat affect, concrete thinking, limited fund of knowledge, loose associations, tangential and/or circumstantial thoughts, somewhat limited insight, and difficulty with memory, attention, and concentration on some occasions. (*Id.*) The ALJ acknowledged that during a therapy session in September 2022, which was after a one-year break in treatment, Plaintiff reported hearing voices but did not show evidence of overt psychosis. (*Id.* at PageID 51.) The ALJ compared this evidence to the normal mental status examination findings in the record, which included a normal mood, normal and cooperative behavior, normal thought content, and intact judgment on several occasions. (*Id.* at PageID 51-53.)

The ALJ concluded that the treatment records generally showed "stable anxiety and depression with medication." (Decision, Doc. No. 7-2 at PageID 51.) The ALJ noted Plaintiff's statement that he stopped taking antidepressant medication because he felt better and thought he no longer needed it. (*Id.* at PageID 52.) The ALJ acknowledged that

Plaintiff thereafter reported worsening of his symptoms and noted that his provider "prescribed only a routine, conservative antidepressant." (*Id.*) The ALJ also noted that although Plaintiff's symptoms increased in late 2023, his providers did not change his medications or treatment plan. (*Id.*)

The ALJ acknowledged that a January 2024 home health care evaluation report documented forgetfulness, confusion, an anxious mood, impulsivity, and impaired memory and cognition. (Decision, Doc. No. 7-2 at PageID 53 (citing AR, Doc. No. 7-9 at PageID 939-40).) The ALJ also noted Plaintiff's statements that he was unable to leave home without assistance, did not drive, and required assistance with basic activities of daily living. (*Id.*) The ALJ concluded that the observations and findings in this report were "not consistent with the evidence." (Decision, Doc. No. 7-2 at PageID 53.) By way of example, the ALJ cited Plaintiff's statements to the consultative examiners and a treatment provider that he did, in fact, drive, although he also relied on others for rides. (*Id.* (citing AR, Doc. No. 7-7 at PageID 483, 541, 823).) The ALJ also reasoned that the treatment records did not "show the need for a chaperone or assistance obtaining appropriate medical care" or that Plaintiff was unable to assist in his treatment or understand or communicate his medical needs. (*Id.*)

The ALJ concluded that, based on the balance of the evidence, Plaintiff's allegations about the severity of his symptoms were inconsistent with the medical and other evidence in the record. (Decision, Doc. No. 7-2 at PageID 53.) The ALJ explained that Plaintiff's treatment was "routine and conservative in nature as well as largely effective in alleviating both physical and mental symptoms." (*Id.*) The ALJ stated that

Plaintiff's functioning had "not materially changed since the prior ALJ decision based on a review of the current evidentiary record." (*Id.*) Finally, the ALJ cited evidence that "strongly suggests that [Plaintiff] has exaggerated symptoms." (*Id.*) For example, the ALJ noted that although Plaintiff stated in a disability report that he experienced frequent urinary incontinence, he "repeatedly and consistently denied urinary incontinence during medical appointments." (*Id.*) The ALJ also stated: "He was observed with an unsteady gait and cane at the psychological consultant's exam, but not the consultative medical examination." (*Id.*)

After summarizing the evidence regarding Plaintiff's mental impairments, the ALJ explained why she included certain mental limitations in the RFC:

> The residual functional capacity adequately accounts for [Plaintiff's] borderline intellectual functioning or cognitive impairment with reduced complexity and novelty or tasks with oral instructions or tasks learned by demonstration. The reduced social demands fully account for [Plaintiff's] anxiety symptoms and difficulty interacting with others with no over-the-shoulder supervision, no tandem tasks with coworkers, and limited interaction with the public. The limitation to simple and routine work accounts for any deficits in [Plaintiff's] concentration, stress tolerance, and comprehension. Limited changes that are explained in advance also account[] for [Plaintiff's] low comprehension and limited stress tolerance.

(Decision, Doc. No. 7-2 at PageID 53.)

The ALJ found persuasive the opinions of the state agency medical and psychological consultants who adopted the RFC in the prior ALJ decision, as they were "consistent with the evidence." (Decision, Doc. No. 7-2 at PageID 53.) She explained:

> [Plaintiff's] physical exams are fairly benign and medical conditions are noted to be well controlled with medication and stable. His reported symptoms and objective medical evidence have not materially changed since the prior ALJ decision. The reviewing medical experts also supported

> their conclusions with specific citations to the current evidentiary record and evidence since their assessment does not support greater or additional limitations. Likewise, consistent with the reviewing psychologists' assessments, [Plaintiff's] mental impairments, including anxiety and depression, improved with medication and have largely been stable through the current relevant period. His intellectual impairment is accommodated by the residual functional capacity. The mental consultants also supported their conclusions with a thorough evaluation of the evidence, including the consultative psychological exam findings, opinion evidence, mental status exams, treatment history, activities, and [Plaintiff's] reported symptoms. Evidence after their assessments does not support greater or additional limitations (Exhibits C3A, C5A).

(*Id*. at PageID 53-54.)

Finally, the ALJ found that Plaintiff can perform jobs that exist in significant numbers in the national economy. (Decision, Doc. No. 7-2 at PageID 56.) The ALJ therefore concluded that Plaintiff has not been under a disability since the date that his second application was filed. (*Id*. at PageID 57.)

## IV. LAW AND ANALYSIS

Plaintiff alleges that "the ALJ reversibly erred by failing to clearly afford [Plaintiff's] current application a 'fresh look' as required by this circuit's caselaw and the statutory framework of the Social Security Act, and by relying on flawed opinion evidence." (SE, Doc. No. 8 at PageID 1233.) Plaintiff contends that the ALJ applied the wrong legal standard and relied on flawed opinion evidence, and therefore her decision "lacks the support of substantial evidence and fails to build 'an accurate and logical bridge between the evidence and the result.'" (*Id.* at PageID 1244.)

In response, Defendant contends that the ALJ "gave the medical evidence a fresh review as required and considered the evidence post-dating Plaintiff's alleged onset date

in formulating the residual functional capacity." (Mem. In Opp., Doc. No. 12 at PageID 1260.) Defendant also argues that the ALJ did not err by finding persuasive the state agency consultants' opinions. (*Id.* at PageID 1260-61.) In particular, Defendant asserts that "[b]ecause the ALJ and the state agency reviewers based their conclusions on the medical evidence of record obtained after the previous ALJ decision, they provided the fresh look to which Plaintiff was entitled." (*Id.* at PageID 1261.)

As discussed below, the Court finds that although the ALJ cited the wrong legal standard (as she was required to do by the Social Security Acquiescence Ruling in effect at that time), she nevertheless provided the fresh review required by governing Sixth Circuit law. The Court further finds that the ALJ's conclusions are supported by substantial evidence. Therefore, the ALJ's decision shall be affirmed.

**A. Relevant Sixth Circuit Case Law**

Prior to 2018, the leading Sixth Circuit case on the application of res judicata to claims for Social Security disability benefits was *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997). In that case, the court held that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Id.* at 842 (citations omitted). The next year, the Social Security Administration issued Acquiescence Ruling 98-4(6), which applied *Drummond* to all administrative proceedings in the Sixth Circuit:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim ... unless there is new and material evidence relating to such a finding or there has been a change in the law,

> regulations or ruling affecting the finding or the method for arriving at the finding.

SSAR 98-4(6), 63 Fed. Reg. 29771, 29773, 1998 SSR LEXIS 5, at *3 (June 1, 1998).

This legal rule changed twenty years later when the Sixth Circuit explained that "unusual facts" in *Drummond* had "led to some overstatement" about res judicata. *Earley v. Comm'r of Soc. Sec.,* 893 F.3d 929, 933 (6th Cir. 2018). Noting that res judicata only precludes bringing the same claim again, the Sixth Circuit clarified that a disability claim for a later time period is different from a disability claim for an earlier time period. *Id*. The Sixth Circuit reasoned that "human health is rarely static.... Sometimes we become sick and sometimes we become better as time passes." *Id*. Thus, "[a]ny earlier proceeding that found or rejected the onset of a disability could rarely, if ever, have 'actually litigated and resolved' whether a person was disabled at some later date." *Id*.

Accordingly, *Earley* clarified that "[a]n individual may file a second application—for a new period of time—for all manner of reasons and obtain independent review of it so long as the claimant presents evidence of a change in condition or satisfies a new regulatory threshold." 893 F.3d at 932. Further, although "an applicant remains free to bring a second application that introduces no new evidence or very little new evidence after a failed application ... she should not have high expectations about success" because "[w]hat's past likely will be precedent in that setting." *Id*. at 933-34. The Sixth Circuit also cautioned that "[f]resh review is not blind review" and held that "it is fair for an [ALJ] to take the view that, absent new and additional evidence, the first [ALJ's] findings are a legitimate, albeit not binding consideration[.]" *Id.* at 933-34.

Notably, although *Earley* was decided in 2018, the Social Security Administration did not rescind Social Security Acquiescence Ruling 98-4(6) until November 25, 2024, with an effective date of December 2, 2024. 89 Fed. Reg. 92992 (Nov. 25, 2024). Until that date, ALJs in the Sixth Circuit were still required to comply with SSAR 98-4(6).[3] Accordingly, ***because the ALJ decision challenged here was issued on March 8, 2024, the ALJ was required to comply with SSAR 98-4(6) even though it was outdated.***

Two Sixth Circuit panels have applied *Earley* in unpublished opinions that, while not governing precedent, are nevertheless instructive. In *Dennis D. v. Comm'r of Soc. Sec.*, No. 23-3667, 2024 U.S. App. LEXIS 6829, 2024 WL 1193662 (6th Cir. Mar. 20, 2024), the court held that a later ALJ may use a prior ALJ's determinations as a starting point, "evaluate a claimant's new records for evidence of a significant change in relation to a prior valid finding," and "measure the new medical evidence 'against the backdrop' of the prior RFC finding instead of assessing the new evidence on its own merits." *Id*. at *6. The court held that "it is perfectly acceptable for a subsequent ALJ to presume the accuracy of a prior finding" because such an approach will promote "finality, efficiency, and consistent treatment of like cases." *Id.* The court also explained that "[p]resuming accuracy is not the same as treating prior findings as binding." *Id*.

Another Sixth Circuit panel considered whether an ALJ gave a second disability application an "independent 'fresh look'" in *Gooden v. Comm'r of Soc. Sec.*. No. 23-3927, 2024 U.S. App. LEXIS 13711, 2024 WL 2830817 (6th Cir. June 4, 2024). The ALJ

[3] On and after December 2, 2024, ALJs in the Sixth Circuit must comply with new SSAR 24-1(6), which explains how the Social Security Administration applies *Earley*. 89 Fed. Reg. 92992 (Nov. 25, 2024).

in that case stated that she "must adopt" the prior RFC unless "there is new and material evidence or changed circumstances" or "there has been a change in the relevant law." *Id.* at *3. The *Gooden* court held that, despite the ALJ's misstatement of the legal standard, "the key question is whether the second ALJ treated review of the new application 'as if' they were 'bound by the prior decision.'" *Id.* (quoting *Dennis D.*, 2024 WL 1193662, at *4). The court explained that the reviewing court should look beyond an ALJ's "rote recitation of a legal standard" and evaluate the ALJ's *actual* analysis. *Id.* The court also confirmed that when a claimant seeks disability benefits for a new time period that has not been adjudicated, "the second ALJ *may* abide by the first ALJ's determinations as long as the claimant has failed to present 'evidence of a change in condition' or satisfy a 'new regulatory threshold.'" *Id.* at *4 (quoting *Earley*, 893 F.3d at 932).

**B. The ALJ Conducted the Fresh Review Required by *Earley*.**

Because the ALJ in this case was required to comply with the outdated (and now rescinded) SSAR 98-4(6), she recited this incorrect legal standard: "[I]n the absence of new and material additional evidence or changed circumstances, a subsequent ALJ is bound by the findings of a previous ALJ's or Appeals Councils' decision." (Decision, Doc. No. 7-2 at PageID 42.) But a review of the ALJ's lengthy and thorough decision shows that the ALJ did not consider herself to be bound by the prior ALJ decision and instead conducted the fresh review required by *Earley*. Specifically, the ALJ examined all of the relevant evidence before concluding that Plaintiff's physical and mental limitations did not materially change after the date of the prior ALJ decision. Therefore, the ALJ did not err simply because she was required to cite an outdated legal standard.

To support his argument that the ALJ did not take a fresh look at the evidence that post-dated the prior ALJ decision, Plaintiff cites *Bryant v. Comm'r of Soc. Sec.*, No. 1:24-cv-00926, 2025 WL 1295086, 2025 U.S. Dist. LEXIS 84717 (N.D. Ohio May 5, 2025), *report and recommendatio*n adopted, 2025 U.S. Dist. LEXIS 96537, 2025 WL 1474330 (N.D. Ohio May 21, 2025)). (SE, Doc. No. 8 at PageID 1239-44.) In *Bryant*, the court found that although the ALJ considered evidence that post-dated the prior ALJ decision, the ALJ did not provide the fresh look required by *Earley* because she repeatedly focused her analysis on whether that evidence "demonstrate[d] 'no significant change,' 'few changes,' or 'some improvement.'" 2025 U.S. Dist. LEXIS 84717, at *23. The court concluded: "This language clearly suggests that the ALJ reviewed the new evidence to assess whether it showed 'a significant change' in Mr. Bryant's condition," rather than providing a fresh look at the new evidence. *Id*. Moreover, the court reasoned, "no other part of the ALJ's analysis clearly undercuts her explicit [and incorrect] statement that she considered the [prior] ALJ decision 'final and binding' absent such evidence." *Id*.

Plaintiff's reliance on *Bryant* fails because the facts in this case are different. Here, the ALJ did not focus her analysis upon whether, and to what extent, Plaintiff's condition changed after the date of the prior ALJ decision. Instead, the ALJ carefully summarized and analyzed the evidence and applied the relevant legal standards, without focusing narrow-mindedly on whether the evidence showed that Plaintiff's condition had changed.

Moreover, the ALJ limited her discussion of the effect of the prior ALJ decision to four paragraphs near the beginning of the nineteen-page decision. (Decision, Doc. No. 7-2, PageID 41-42.) The ALJ stated that she evaluated the prior decision "in accordance

with the Social Security Acquiescence Rulings 98-3(6) and 98-4(6) … [which] provide that, in the absence of new and material additional evidence or changed circumstances, a subsequent ALJ is bound by the findings of a previous ALJ's or Appeals Councils' decision." (*Id*. at PageID 42 (also citing *Drummond*, 126 F.3d 837 and *Dennard*, 907 F.2d 598).) The ALJ explained that new evidence "is 'material' if … the evidence both differs from that presented in the prior claim and warrants a finding different than made in the decision on the prior claim." (*Id*.) The ALJ concluded:

> The undersigned has reviewed and considered the current evidentiary record. New evidence in this claim is not material, however, as it does not warrant deviating from the prior ALJ's decision with regard to the severe impairments, listings, residual functional capacity, past relevant work, or education. The prior ALJ decision findings fully account for the claimant's medical and mental conditions with no significant change in the claimant's physical or mental functioning since that decision…. As new evidence in this current claim is not material, i.e., does not warrant deviating from the prior findings, the undersigned adopts the June 22, 2021, prior ALJ decision.

(*Id*.)

If the ALJ's analysis had stopped there, then the Court might be inclined to agree with Plaintiff that the fault identified by the *Bryant* court also exists here. But the ALJ did not stop there. Instead, she discussed the evidence in detail and applied the relevant legal standards in a discussion that took up approximately fifteen pages. That discussion, moreover, was not limited to considering whether Plaintiff's condition had changed after the date of the prior ALJ decision. Given this context, the Court concludes that the ALJ provided the required fresh look notwithstanding her citation of an outdated standard.

The ALJ also did not err by considering the prior ALJ decision. To the contrary, "[c]ourts within this Circuit have consistently and repeatedly remanded cases where an ALJ failed to acknowledge or discuss a prior disability determination." *Showman v. Berryhill*, No. 1:17-cv-02017, 2018 U.S. Dist. LEXIS 144461, at *27 (N.D. Ohio Aug. 9, 2018). And it is "perfectly acceptable for a subsequent ALJ to presume the accuracy of a prior finding." *Dennis D.*, 2024 WL 1193662, at *4. "[T]he key question," as *Gooden* instructs, "is whether the second ALJ treated review of the new application as if they were bound by the prior decision." 2024 WL 2830817, at *3 (internal quotations and citation omitted). Further, "the second ALJ *may* abide by the first ALJ's determinations as long as the claimant has failed to present 'evidence of a change in condition' or satisfy a 'new regulatory threshold.'" *Id.* at *4 (citing *Earley*, 893 F.3d at 932). That is precisely what the ALJ concluded in this case, and she did not err by doing so.

Nor, contrary to Plaintiff's argument, did the ALJ err by finding the opinions of the state agency consultants to be persuasive. (SE, Doc. No. 8 at PageID 1243-44.) The consultants began their review by listing the severe impairments and RFC set forth in the June 22, 2021 ALJ decision. (AR, Doc. No. 7-3 at PageID 122-24.) Next, the consultants reviewed treatment notes from four medical visits between November 9, 2021 and May 26, 2022. (*Id.*) The consultants also considered the psychological consultative evaluation conducted in January 2023, and the independent medical consultative examination conducted on April 20, 2023. (*Id.* at PageID 122-25.)

The consultants then stated their conclusions. With respect to Plaintiff's physical impairments, Dana Schultz, M.D. explained that "[t]he ALJ [RFC] dated 6-22-21 is being

adopted as [Plaintiff's] conditions do not appear to have changed much." (AR, Doc. No. 7-3 at PageID 126.) With respect to Plaintiff's mental impairments, Larry Kravitz Psy.D. similarly stated that "[t]he ALJ [RFC] dated 6-22-21 is being adopted as [Plaintiff's] conditions do not appear to have changed much since then." (*Id.*) These administrative findings were upheld at the reconsideration level. (AR, Doc. No. 7-3 at PageID 130-36.)

The state agency consultants did not err by considering the prior ALJ decision and using it as a starting point. For example, the state agency psychological consultants in *Gooden* adopted the prior ALJ's mental RFC findings after they found that the plaintiff's mental conditions had "not significantly changed" since the prior ALJ decision. 2024 WL 2830817, at *6. The ALJ compared the consultants' findings to the newly submitted evidence and concluded that the consultants' findings were persuasive. *Id.* The Sixth Circuit found no error in the ALJ's conclusion, determining that the ALJ cited substantial evidence to support her conclusion that the consultants' findings were persuasive. *Id.*

Likewise, the ALJ in this case did not err when she reviewed the state agency consultants' prior administrative findings and found them to be persuasive. She also cited substantial evidence to support her conclusion. The ALJ explained: "[Plaintiff's] physical exams are fairly benign and medical conditions are noted to be well controlled with medication and stable." (Decision, Doc. No. 7-2 at PageID 53-54.) The ALJ stated that the physical consultants "supported their conclusions with specific citations to the current evidentiary record and evidence since their assessment does not support greater or additional limitations." (*Id.* at PageID 54.) As for the psychological consultants' findings, the ALJ reasoned that "[Plaintiff's] mental impairments, including anxiety and

depression, improved with medication and have largely been stable through the current relevant period." (*Id.*) The ALJ further stated that the psychological consultants "supported their conclusions with a thorough evaluation of the evidence, including the consultative psychological exam findings, opinion evidence, mental status exams, treatment history, activities, and [Plaintiff's] reported symptoms." (*Id.*) The ALJ's explanation is supported by her detailed discussion and analysis of the records that documented Plaintiff's treatment for his physical and mental conditions.

For all of these reasons, the Court concludes that the ALJ conducted the required fresh review of all the relevant evidence before determining that Plaintiff's physical and mental limitations had not materially changed since the prior ALJ decision. Moreover, substantial evidence supports the ALJ's determination. Plaintiff's assertions to the contrary are without merit and are therefore overruled.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. No. 8) is OVERRULED;
2. The Court AFFIRMS the Commissioner's non-disability determination; and
3. The case is terminated on the Court's docket.

*/s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge